UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OLIVIA RISVEGLIA,

                    Plaintiff,         Civil Action No. 19-11073
                                          Honorable Matthew F. Leitman
v.                                              Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [13, 18]

Plaintiff Olivia Risveglia ("Risveglia") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 13, 18), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Risveglia is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 18)** be **DENIED**, Risveglia's Motion for Summary Judgment **(ECF No. 13)** be **GRANTED IN PART** to the extent it seeks remand

and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

## II.     REPORT

### A.     Background

Risveglia was 32 years old at the time of her alleged onset date of December 1, 2010, and at 5'2" tall weighed approximately 130 pounds during the relevant time period. (Tr. 42, 224, 227). She completed high school but had no further education. (Tr. 42, 228). Previously, she worked as an exotic dancer and then as a house cleaner, but she allegedly stopped working in 2011 because of her medical conditions. (Tr. 43, 45, 46, 227-28, 235, 237). She now alleges disability primarily as a result of back and neck pain, headaches, anxiety, and depression. (Tr. 46-47, 49-50, 227, 243).

After Risveglia's application for SSI was denied at the initial level on July 8, 2016 (Tr. 132-35), she timely requested an administrative hearing, which was held on September 26, 2017, before ALJ Timothy Christensen; however, after the ALJ asked Risveglia a few questions about the extremely modest income she earned prior to her alleged onset date, he left most all of the examination up to Risveglia's counsel, Steven Harthorn. (Tr. 39-65). Vocational expert ("VE") Michael Rosko also testified at the hearing. (*Id.*). On June 13, 2018, the ALJ issued a written decision finding that Risveglia is not disabled under the Act. (Tr. 23-33). On February 7, 2019, the Appeals Council denied review. (Tr. 1-6). Risveglia timely filed for judicial review of the final decision on April 12, 2019. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Risveglia's medical record, function and disability reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B.     The ALJ's Application of the Disability Framework Analysis**

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Risveglia is not disabled under the Act. At Step One, the ALJ found that Risveglia has not engaged in substantial gainful activity since October 5, 2015 (the application date). (Tr. 25). At Step Two, the ALJ found that she has the severe impairments of degenerative disc disease of the cervical spine, status post fusion at C5-C7; degenerative disc disease of the lumbar spine; major depressive disorder; and generalized anxiety disorder. (*Id.*). At Step Three, the ALJ found that Risveglia's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Risveglia's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations: allowed a sit/stand option, but by exercising that option, she would be off task less than 10% of the workday; no overhead work; no extreme extension or rotation of the head or neck; capable of understanding, remembering, and executing tasks commensurate

with unskilled work (meaning work learned by demonstration or within 30 days or less); only occasional changes in the work setting; and only brief, superficial contact with the public, coworkers, and supervisors. (Tr. 27).

At Step Four, the ALJ found that Risveglia has no past relevant work. (Tr. 32). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Risveglia is capable of performing the jobs of assembler (30,000 jobs nationally); packager (26,000 jobs); inspector (8,000 jobs); and buffing, polishing, sealing type work (20,000 jobs). (Tr. 32-33). As a result, the ALJ concluded that Risveglia is not disabled under the Act. (Tr. 33).

### C.  Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.     Analysis**

In her motion for summary judgment, Risveglia argues that the ALJ erred in giving "little weight" to the opinions of her treating physician, Rakesh Vakhariya, D.O.[1] (ECF

---

[1] Risveglia also argues that the ALJ's RFC finding is not supported by substantial evidence; that the ALJ violated his "duty to investigate the facts and develop the arguments both for and against granting benefits"; and that the ALJ provided "no meaningful discussion in the decision as to the effects of the pain or psychiatric medications on her abilities to maintain full time competitive employment." (ECF No. 13, PageID.970-74). Because the Court is recommending remand on other grounds, it need not evaluate the merits of these arguments. On remand, however, the ALJ should ensure that consideration is given to each of these issues.

6

No. 13, PageID.968-70). For the reasons set forth below, the Court finds merit to this argument.

### 1. The Relevant Medical Evidence[2]

By way of background, Risveglia began treating with Dr. Vakhariya for "severe intractable" back and neck pain in 2010, some five years before her application date of October 5, 2015. (Tr. 499). X-rays taken in May 2010 revealed moderate degenerative changes (with reduced range of motion) in the cervical spine. (Tr. 744-45). A May 2010 lumbar spine MRI showed a mild disc bulge at L4-L5 and a moderate disc bulge at L5-S1, without significant stenosis, but with bilateral foraminal narrowing and mild effacement of the L5 nerve roots. (Tr. 745-46). A February 2011 MRI of Risveglia's cervical spine showed mild disc osteophyte complex formation at C5-C6 and C6-C7, with mild spinal stenosis and moderate bilateral neural foramen stenosis. (Tr. 746-47). A June 2011 EMG showed mild bilateral L5 radiculopathy and mild left C7 radiculopathy. (Tr. 629-32). Subsequently, a May 2013 MRI of the cervical spine revealed progression in the disc disease at C5-C6 and C6-C7, with canal and foraminal stenosis. (Tr. 752). As a result, Risveglia underwent an anterior cervical discectomy and fusion surgery at C5-C7 on September 25, 2013.[3] (Tr. 729-30).

---

[2] Because Risveglia's arguments before this Court focus on the ALJ's evaluation of her physical impairments, the Court will confine its discussion to evidence pertaining to these conditions.

[3] In the years leading up to Risveglia's surgery, Dr. Vakhariya primarily treated her back and neck pain with lumbar and cervical injections and pain medication (including Percocet, Oxycontin, and Flexeril). (Tr. 407-08, 418, 438-39, 462-63, 483-84, 526-27, 547-48, 570-71, 612-14, 615-26).

7

Following her surgery, and throughout 2014 and 2015, Risveglia continued to treat with Dr. Vakhariya for continued back and neck pain. (Tr. 579-602, 713-21). A December 2014 MRI of the cervical spine showed a posterolateral protrusion at C3-C4, abutting the exiting ventral nerve root, as well as degenerative changes with foraminal narrowing at C4-C7. (Tr. 808-09).

On September 14, 2015, Dr. Vakhariya completed a Lumbar RFC Questionnaire, in which he indicated that Risveglia suffers from lumbar and cervical degenerative disc disease and radiculopathy. (Tr. 633). Dr. Vakhariya characterized Risveglia's prognosis as "poor." (*Id.*). When asked to identify any positive signs of Risveglia's condition, Dr. Vakhariya circled reduced grip strength, sensory changes, impaired sleep, tenderness, trigger points, muscle spasm, and muscle weakness. (*Id.*). He also indicated that Risveglia had a positive straight leg raising test on the right and positive Spurling's sign bilaterally. (*Id.*). Dr. Vakhariya then opined that Risveglia could walk one block, sit for 20 minutes at a time (up to 2 hours total in a day), stand for 20 minutes at a time (up to 2 hours total in a day), would require a sit/stand option at will, would need to elevate her legs with prolonged sitting, would need periods of walking around for five minutes every 20 minutes, could lift up to 10 pounds, and could never twist, bend, or crouch. (Tr. 634-36).

Throughout the remainder of 2015, 2016,[4] and into 2017, Risveglia continued to treat with Dr. Vakhariya for "severe intractable" neck and back pain, with treatment including pain medication and numerous injections. (Tr. 388-90, 677-712). On July 24,

---

[4] On June 30, 2016, state agency reviewing physician Milagros Flores, M.D. reviewed Risveglia's medical records and opined that she could perform a reduced range of light work. (Tr. 122-23).

8

2017, Dr. Vakhariya completed a second Lumbar RFC Questionnaire, reiterating the same limitations set forth in his 2015 opinion. (Tr. 722-26).

After the administrative hearing, on January 13, 2018, Risveglia attended a consultative physical examination with Katherine Karo, M.D. (Tr. 893-905). Dr. Karo opined that Risveglia can lift 10 pounds continuously, up to 20 pounds frequently, and up to 50 pounds occasionally. (Tr. 900). Additionally, Dr. Karo opined that Risveglia can sit for 15 minutes at a time (up to 4 hours total); stand for 15 minutes at a time (up to 3 hours total); walk for 15 minutes at a time (up to 2 hours total); is capable of frequent reaching overhead; and is capable of continuous reaching, handling, fingering, feeling, and pushing/pulling. (Tr. 901-02). Dr. Karo further noted that Risveglia is "young and without significant medical comorbidity"; thus, her pain could decrease and her function could increase with physical conditioning. (Tr. 905).

### 2. *The ALJ's Evaluation of Dr. Vakhariya's Opinions*

Risveglia now argues that the ALJ erred in discounting the September 2015 and July 2017 opinions of her treating physician, Dr. Vakhariya. (ECF No. 13, PageID.968-72). The treating physician rule "mandate[s] that the ALJ 'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)).[5] "If the ALJ declines to give a treating source's opinion controlling

---

[5] Although this regulation was replaced by 20 C.F.R. § 404.1520, it still applies to claims like Risveglia's that were filed before March 27, 2017. *See* 20 C.F.R. § 404.1527.

9

weight, [the ALJ] must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). "Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given to a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (quoting 20 C.F.R. § 404.1527(c)(2)). As a rule, then, the ALJ must build an accurate and logical bridge between the evidence and his conclusion. *See Wilson*, 378 F.3d at 544-46 (ALJ's failure to make sufficiently clear why he rejected the treating physician's opinion was not harmless error, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion).

In this case, the ALJ considered the Lumbar RFC Questionnaires completed by Dr. Vakhariya, stating as follows:

> … both [of] these assessments are given little weight because they are inconsistent with the claimant's daily activities, the assessment by Dr. Flores, and the recent evaluation of the claimant by Dr. Karo. Additionally, Dr. Vakharlya's [sic] chart notes do not corroborate limitations of no posturals, an inability to sit for more than 20 minutes, and the need to elevate her legs when seated. Rather, the claimant consistently exhibits no muscle atrophy and no significant neurological deficits, which is consistent with the claimant's ability to maintain her activities of daily living and drive. Also Dr. Vakharlya [sic] consistently encouraged the claimant to attend physical therapy and perform home exercises, which is inconsistent with the limitations noted by Dr. Vakharlya [sic].

10

(Tr. 31). Risveglia now argues that the primary reasons articulated by the ALJ for discounting Dr. Vakhariya's opinions – namely, that they are inconsistent with her daily activities and Dr. Vakhariya's own treatment notes – are not supported by substantial evidence.[6] For the reasons set forth below, the Court agrees.

To begin with, the ALJ discounted Dr. Vakhariya's opinions as inconsistent with Risveglia's "ability to maintain her activities of daily living and drive." (Tr. 31). Although the ALJ does not specify in his evaluation of Dr. Vakhariya's opinions exactly what "daily activities" Risveglia allegedly performs that are inconsistent with these opinions, earlier in the decision he noted that her daily activities include preparing simple meals, performing house cleaning and laundry, driving, and shopping. (Tr. 28 (citing Tr. 243-58)). The problem, however, is that a fair review of the evidence cited by the ALJ, as well as Risveglia's hearing testimony, makes clear that the ALJ's conclusion is not supported by substantial evidence. For example, when asked if she is able to prepare meals, Risveglia indicated that she "used to cook" but now finds it "too painful" and only "sometimes" makes "small quick things." (Tr. 245). Elsewhere, Risveglia indicated that housework is

---

[6] As set forth above, the ALJ also discounted Dr. Vakhariya's opinions in part "because they are inconsistent with … the assessment by Dr. Flores, and the recent evaluation of the claimant by Dr. Karo." (Tr. 31). But, Dr. Flores merely reviewed Risveglia's medical records in June of 2016, and Dr. Karo examined her on only one occasion (at the request of the Commissioner), about 7 years after her alleged onset date. Generally speaking, such opinions would not be entitled to greater weight than those of a treating source. *See* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").

11

"too painful" and she lives with her parents, who perform all household chores.[7] (Tr. 60, 246). And, while the ALJ repeatedly references Risveglia's ability to drive, she indicated in her function report that "most times" she is unable to drive, a fact she confirmed at the administrative hearing. (Tr. 56, 246). Finally, as for shopping, Risveglia indicated that she "[doesn't] really shop due to pain" and tries to order online. (Tr. 246). The ALJ's analysis also failed to reconcile Risveglia's testimony that she spends her days "mostly lay[ing] around with heating pad – watch[ing] T.V." (Tr. 244; *see also* Tr. 51 (spends most days at home, "laying around watching TV")). And, the ALJ made no mention of the fact that Risveglia requires help attending to certain of her own personal care (such as washing her back, caring for her hair, and tying her shoes). (Tr. 244). For all of these reasons, the ALJ's decision to discount the opinions of Risveglia's treating physician, at least in part because of her alleged wide range of daily activities, is not supported by substantial evidence. *See, e.g., Hull v. Colvin*, No. 4:13-cv-16-DPM-JJV, 2013 WL 5309554, at *3 (E.D. Ark. September 19, 2013) (ALJ erred in evaluating claimant's daily activities when he used "only part of Plaintiff's statements about her abilities, without context").

Equally problematic is the ALJ's decision to discount Dr. Vakhariya's opinions as inconsistent with his chart notes, in which Risveglia purportedly "consistently exhibit[ed] … no significant neurological deficits …." (Tr. 31). The ALJ does not cite to any specific

---

[7] To the extent the ALJ's reference to "house cleaning" related to Risveglia's testimony about prior work she performed, that would not change the analysis. Risveglia testified that she had only three or four clients whose houses she cleaned once or twice a month. (Tr. 44-45). More importantly, she testified that she only did that work "until 2010 . . . until [she] couldn't do it anymore, physically . . ." (*Id.*). Thus, that work would have ended prior to her alleged onset date, and her back surgery a few years later.

12

evidence in support of this conclusion, which is inappropriate, as it is not this Court's function to comb through the record to determine what evidence the ALJ may have had in mind to support this conclusion. *See Mendyk v. Comm'r of Soc. Sec.*, No. 18-11730, 2019 WL 4053949, at *6 (E.D. Mich. Aug. 7, 2019) ("neither the claimant nor the Court can be expected to search through the record and guess about what appeared to be 'inconsistent' in the ALJ's mind's eye"). Moreover, a thorough review of Dr. Vakhariya's treatment notes reveals ample evidence of what appear to be significant neurological deficits, including the following:

- Numerous findings of decreased strength in both the upper and lower extremities. (*E.g.*, Tr. 580, 583, 625, 678, 681, 684, 687, 690, 694, 697, 701, 704, 708, 711, 714, 717, 720).

- Repeated positive facet loading tests of the cervical and lumbar spines. (*E.g.*, Tr. 389, 580, 583, 587, 592, 595, 598, 601, 604, 607, 613, 616, 619, 622, 625, 678, 681, 684, 687, 690, 694, 697, 701, 704, 708, 711, 714, 717, 720).

- Consistently positive straight leg raising tests. (*E.g.*, Tr. 389, 580, 583, 587, 592, 595, 598, 601, 604, 607, 613, 616, 619, 622, 625, 678, 681, 684, 687, 690, 694, 697, 701, 704, 708, 711, 714, 717, 720).

- Numerous positive Spurling's tests. (*E.g.*, Tr. 583, 587, 592, 595, 598, 601, 604, 607, 613, 616, 619, 622, 678, 681, 684, 687, 690, 694, 697, 701, 704, 708, 711, 714, 717, 720).

- Repeated references to decreased sensation to light touch and/or pinprick. (*E.g.*, Tr. 389, 580, 583, 587, 592, 595, 598, 601, 604, 607, 613, 616, 619, 622, 678, 681, 684, 687, 690, 694, 697, 701, 704, 708, 711, 714, 717, 720).

Additionally, the record contains evidence of tenderness to palpation over the cervical and lumbar spines (Tr. 613, 616, 619, 622); muscle spasm (Tr. 580, 592, 613, 616,

619, 622, 717); and decreased range of motion (Tr. 389, 580, 583, 592, 601, 607, 616, 622, 678, 690, 701, 711, 717, 720), none of which was mentioned by the ALJ.[8]

The foregoing makes clear that the ALJ's decision to discount Dr. Vakhariya's opinions as inconsistent with repeated findings of "no significant neurological deficits" (Tr. 31) is not supported by substantial evidence, and is not the product of an even and thorough weighing of the competing evidence in the record. *See Trudell ex rel. Bushong v. Apfel*, 130 F. Supp. 2d 891, 895 (E.D. Mich. 2001) ("'Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'") (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)); *Roberts v. Colvin*, No. 13-14675, 2015 WL 181658, at *10 (E.D. Mich. Jan. 14, 2015) (noting that while ALJ need not discuss all record evidence, "the quality and volume of evidence not discussed by the ALJ may 'raise[] serious doubts about the supportability of the ALJ's RFC finding' and overall conclusions.") (quoting *Wilcox v. Comm'r of Soc. Sec.*, No. 13-12549, 2014 WL 4109921, at *7 (E.D. Mich. Aug.19, 2014)).

---

[8] The ALJ also discounted Dr. Vakhariya's opinions because his "chart notes do not corroborate limitations of no posturals, an inability to sit for more than 20 minutes, and the need to elevate her legs when seated." (Tr. 31). While it might be true that such functional limitations are not documented in Dr. Vakhariya's treatment notes, the objective findings discussed above (decreased strength, positive facet loading and straight leg raising tests, and decreased sensation) all suggest that Risveglia would indeed be limited in the abilities to climb, balance, crouch, stoop, and sit for extended periods of time. Thus, this aspect of the ALJ's decision does not constitute a good reason for giving little weight to Dr. Vakhariya's opinion.

14

Moreover, had the ALJ fully and fairly considered the other factors set forth in 20 C.F.R. § 416.927(c)(2), as he should have done even if he declined to afford Dr. Vakhariya's opinions controlling weight, they too may well have weighed in favor of affording more than "little weight" to those opinions. For example, Risveglia had a lengthy treating relationship with Dr. Vakhariya – from 2010 to 2018 – and saw him on a regular basis (generally, monthly or almost monthly) for the same conditions (neck and back pain) over time. These factors weigh in favor of affording his opinion significant weight. *See* 20 C.F.R. §§ 416.927(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."); 416.927(c)(2)(ii) ("Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion."). Moreover, Dr. Vakhariya is an anesthesiologist who specializes in pain management, factors the ALJ does not appear to have considered. *See* 20 C.F.R. § 416.927(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").

For all of these reasons, the Court cannot find that the ALJ's decision to give little weight to Dr. Vakhariya's opinion is supported by substantial evidence. Thus, remand is required so that the ALJ can properly consider the medical opinions in question.

### III. CONCLUSION

For foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 18)** be **DENIED**, Risveglia's Motion for

Summary Judgment **(ECF No. 13)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

Dated: April 29, 2020                         s/David R. Grand
Ann Arbor, Michigan                   DAVID R. GRAND
                                                  United States Magistrate Judge

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should

be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 29, 2020.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager